UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

DIONNE JOHNSON                    CIVIL ACTION NO. 6:17-1371

VERSUS                           JUDGE JAMES

U.S. COMMISSIONER,               MAGISTRATE JUDGE WHITEHURST
SOCIAL SECURITY
ADMINISTRATION

## REPORT AND RECOMMENDATION

Before the Court is an appeal of the Commissioner's finding of non-disability.

Considering the administrative record, the briefs of the parties, and the applicable

law, it is RECOMMENDED that the Commissioner's decision be REVERSED AND

REMANDED.

## ADMINISTRATIVE PROCEEDINGS

The claimant, Dionne Johnson, fully exhausted her administrative remedies

prior to filing this action in federal court.  The claimant filed an application for

disability insurance benefits ("DIB") under Title II of the Social Security Act (the

"Act") on May 24, 2014 and supplemental security income benefits ("SSI") under

Title XVI of the Act on May 27, 2014.  Under Title II, the claimant alleged disability

from January 1, 2013 through December 31, 2015 (the last date she was last insured).[1]

Under Title XVI, she alleged disability from January 1, 2013 through July 27, 2016,

---

[1] Tr. 206, 212, 234.

the date of the ALJ's decision.[2]  The claimant's application for DIB and SSI was denied on October 8, 2014.[3]  The claimant requested a hearing, which was held on May 19, 2016 before Administrative Law Judge Doug Gabbard, II.[4]  The ALJ issued a decision on July 27, 2016,[5] concluding that although the claimant had the severe impairments of arthritis in the left knee and right ankle, COPD, morbid obesity, major depressive disorder, and generalized anxiety disorder, the claimant nevertheless retained the residual functional capacity to perform certain medium level work and was not, therefore,  considered "disabled" under the Social Security Act at any time from the date her application was filed through the date of the ALJ's decision.

The claimant asked for review of the decision, and the Appeals Council denied the claimants' request for a review on August 22, 2017.[6]  Therefore, ALJ Gabbard's July 26, 2016 decision became the final decision of the Commissioner for the purpose of the Court's review pursuant to 42 U.S.C. §405(g).  The claimant then filed this action seeking review of the Commissioner's decision.

---

[2] Tr. 22, 123, 135.

[3] Tr. 148-51.

[4] The hearing transcript is found at Tr. 27-55.

[5] Tr. 10-22.

[6] Tr. 1-3.

-2-

Because the two periods for which benefits are sought under Title II and Title XVI overlap, the undersigned will address the adjudicated period as one period, that is, from January 1, 2013 through July 26, 2016.

## SUMMARY OF PERTINENT FACTS

The claimant was born on October 22, 1969 and is considered a "younger person" at all times throughout the proceedings.[7]  The claimant has past work as a home health aide and a certified nurse's aid, both jobs that were medium in exertional level, but were deemed "heavy" as actually performed.[8]  The claimant had a steady work record from 1990 to 2012, with the exception of 1999 and 2000 when she had virtually no earnings.  The claimant alleges that she has been disabled since January 1, 2013 due to anxiety, depression, arthritis, COPD, high blood pressure, and inability to walk more than 20 steps without having to sit to breathe.[9]

## ANALYSIS

### A.  STANDARD OF REVIEW

Judicial review of the Commissioner's denial of disability benefits is limited to determining whether substantial evidence supports the decision and whether the

_____

[7] Doc. 14 at 2.

[8] Doc. 14 at 2.

[9] Tr. 227.

proper legal standards were used in evaluating the evidence.[10] "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[11] Substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will only be found when there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'"[12]

If the Commissioner's findings are supported by substantial evidence, then they are conclusive and must be affirmed.[13] In reviewing the Commissioner's findings, a court must carefully examine the entire record, but refrain from re-weighing the evidence or substituting its judgment for that of the Commissioner.[14] Conflicts in the evidence and credibility assessments are for the Commissioner to resolve, not the

---

[10]     *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995).

[11]     *Villa v. Sullivan*, 895 F.2d at 1021-22 (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)).

[12]     *Hames v. Heckler*, 707 F.2d at 164 (quoting *Hemphill v. Weinberger*, 483 F.2d 1137. 1139 (5th Cir. 1973), and *Payne v. Weinberger*, 480 F.2d 1006, 1007 (5th Cir. 1973)).

[13]     42 U.S.C. § 405(g); *Martinez v. Chater*, 64 F.3d at 173; *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000).

[14]     *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988); *Villa v. Sullivan*, 895 F.2d at 1021; *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995); *Carey v. Apfel*, 230 F.3d at 135; *Boyd v. Apfel,* 239 F.3d 698, 704 (5th Cir. 2001).

courts.[15]    Four elements of proof are weighed by the courts in determining if substantial evidence supports the Commissioner's determination:   (1) objective medical facts, (2) diagnoses and opinions of treating and examining physicians, (3) the claimant's subjective evidence of pain and disability, and (4) the claimant's age, education and work experience.[16]

## B.    Entitlement to Benefits

The Disability Insurance Benefit ("DIB") program provides income to individuals who are forced into involuntary, premature retirement, provided they are both insured and disabled, regardless of indigence.[17]   Every individual who meets certain income and resource requirements, has filed an application for benefits, and is determined to be disabled is eligible to receive Supplemental Security Income ("SSI") benefits.[18]

The term "disabled" or "disability" means the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can

---

[15]    *Martinez v. Chater*, 64 F.3d at 174.

[16]    *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991); *Martinez v. Chater*, 64 F.3d at 174.

[17]    See 42 U.S.C. § 423(a).

[18]    42 U.S.C. § 1382(a)(1) & (2).

be expected to last for a continuous period of not less than twelve months."[19]  A claimant shall be determined to be disabled only if his physical or mental impairment or impairments are so severe that he is unable to not only do his previous work, but cannot, considering his age, education, and work experience, participate in any other kind of substantial gainful work which exists in significant numbers in the national economy, regardless of whether such work exists in the area in which the claimant lives, whether a specific job vacancy exists, or whether the claimant would be hired if he applied for work.[20]

## C.    Evaluation Process and Burden of Proof

The Commissioner uses a sequential five-step inquiry to determine whether a claimant is disabled.  This process required the ALJ to determine whether the claimant (1) is currently working; (2) has a severe impairment; (3) has an impairment listed in or medically equivalent to those in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) is able to do the kind of work he did in the past; and (5) can perform any other work at step five.[21]  If it is determined at any step of that process that a claimant is or

---

[19]     42 U.S.C. § 1382c(a)(3)(A).

[20]     42 U.S.C. § 1382c(a)(3)(B).

[21]     20 C.F.R. § 404.1520; see, e.g., *Wren v. Sullivan*, 925 F.2d at 125; *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); *Masterson v. Barnhart*, 309 F.3d 267, 271-72 (5th Cir. 2002); *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000).

is not disabled, the sequential process ends.  "A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis."[22]

Before going from step three to step four, the Commissioner assesses the claimant's residual functional capacity[23] by determining the most the claimant can still do despite his physical and mental limitations based on all relevant evidence in the record.[24]  The claimant's residual functional capacity is used at the fourth step to determine if he can still do his past relevant work and at the fifth step to determine whether he can adjust to any other type of work.[25]

The claimant bears the burden of proof on the first four steps.[26]  At the fifth step, however, the Commissioner bears the burden of showing that the claimant can perform other substantial work in the national economy.[27]  This burden may be

---

[22]     *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994), cert. den. 914 U.S. 1120 (1995) (quoting *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987)).

[23]     20 C.F.R. § 404.1520(a)(4).

[24]     20 C.F.R. § 404.1545(a)(1).

[25]     20 C.F.R. § 404.1520(e).

[26]     *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d at 272; *Newton v. Apfel*, 209 F.3d at 453.

[27]     *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d at 272; *Newton v. Apfel*, 209 F.3d at 453.

satisfied by reference to the Medical-Vocational Guidelines of the regulations, by expert vocational testimony, or by other similar evidence.[28]  If the Commissioner makes the necessary showing at step five, the burden shifts back to the claimant to rebut this finding.[29]  If the Commissioner determines that the claimant is disabled or not disabled at any step, the analysis ends.[30]

### D.    THE ALJ'S FINDINGS AND CONCLUSIONS

The ALJ determined that despite the claimant's severe impairments, she retains the residual functional capacity to perform medium level jobs with certain restrictions, and that there are jobs in significant numbers in the national economy that the claimant can perform, including handpacker and small products assembler.[31]

### E.    THE ALLEGATIONS OF ERROR

The claimant challenges the ALJ's failure to properly consider the combined effects of her impairments on her ability to perform medium work; the failure to assign hypertension and cardiovascular irregularities as severe impairments; the use

---

[28]    *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

[29]    *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d at 272; *Newton v. Apfel*, 209 F.3d at 453.

[30]    *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992), citing *Johnson v. Bowen*, 851 F.2d 748, 751 (5th Cir. 1988).  See, also, 20 C.F.R. § 404.1520(a)(4).

[31]  Tr. 21-22.

of a "sit and squirm" test at the administrative hearing; the Appeals' Council's failure to consider the post-hearing evidence submitted by the claimant; and the use of a defective hypothetical at the claimant's hearing.

### Hypertension and cardiovascular irregularities

The claimant alleges the ALJ erred in failing to assign the claimant's hypertension and cardiovascular irregularities as severe impairments.

The ALJ found that the claimant's arthritis in the left knee and right ankle, chronic obstructive pulmonary disease ("COPD"), morbid obesity, major depressive disorder, and generalized anxiety disorder were severe impairments under the Act, but that her hypertension, allergic rhinitis, gastroesophageal reflux disease, and tobacco abuse were not severe. Tr. 12-13. The claimant argues the ALJ committed reversible error by not finding her hypertension and cardiac issues to be severe impairments.

As an initial matter, the undersigned notes that disability determinations are based on functional limitations rather than the mere existence of a condition. *Milam v. Bowen*, 782 F.2d 1284, 1286 (5th Cir. 1986) ("The fact Milam suffered some impairment does not establish disability. Milam was disabled only if he was incapable of engaging in any substantial gainful activity."). Here, the ALJ recognized that the claimant had been diagnosed with hypertension but also noted that her medical

records showed no associated *functional limitations* (Tr. 13).  Reviewing medical

notes from an April 21, 2016 visit to a cardiologist, the ALJ specifically noted:

> She was assessed with malignant hypertension, but without
> complications.  She may not have achieved perfect control of her
> hypertension longitudinally, but there is no indication she required
> hospitalization for hypertensive crisis and no indication of end organ
> damages of other effects of hypertension, including, but not limited to,
> retinopathy.  On examination, her heart rate was normal and her rhythm
> was regular with no gallup.[32]

Chronic conditions  such as diabetes, hypertension, or high cholesterol do not

directly impair a claimant's functional abilities, but rather cause complications that

can result in functional limitations.  As such, a finding of disability due to these

conditions is dependent on a showing of secondary symptoms that would interfere

with the performance of work activities, such as end-organ damage or observable

clinical symptoms such as loss of sensation or ataxia.  *See Jones v. Bowen*, 829 F.2d

524,  526-27 (5th Cir. 1987); *Epps v. Harris*,  624 F.2d 1267, 1270 (5th Cir. 1980).

There is no evidence in the record that the claimant's hypertension resulted in

functional limitations.  Additionally, the record is replete with medical notations that

the claimant was noncompliant with her blood pressure medications.[33]  It is well-

established that noncompliance with treatment for a condition weighs against a

---

[32] Tr. 13.

[33] Tr. 13, 353, 360, 406, 432, 437, 447, 459, 462, 469, 482, 524, 540, 555.

finding that the condition is disabling. *Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir. 1990). Although the record does show that on May 28, 2015, the claimant stated she had not been able to afford her medications, including her blood pressure medication, the notation also indicates the claimant was advised to make an appointment for medical assistance. The claimant, however, stated she did not have time to do that, and there is no indication in the record that she attempted to schedule such a meeting.[34]

The jurisprudence is clear that although a condition that can be remedied by treatment is not disabling, a person unable to afford such treatment is considered disabled. *Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir. 1990), *citing Lovelace v. Bowen*, 813 F.2d 55, 59 (5th Cir.1987); *Taylor v. Bowen*, 782 F.2d 1294, 1298 (5th Cir. 1986). As the court noted in *Villa*, however, cases that so hold are not controlling where there is no record evidence, besides the testimony of the claimant herself, that she would be disabled with or without regular medical treatment. Accordingly, the fact that the claimant indicated in the record that she cannot afford her medication – where the evidence of record also shows the claimant was counseled on obtaining financial assistance to obtain her medications but declined to investigate her options

---

[34] Tr. 540.

– does not preclude the ALJ from noting that the claimant was noncompliant with her medication regime. *Villa*, 895 F.2d at 1024.

Considering the foregoing, the undersigned concludes that the ALJ properly determined that the claimant's hypertension did not cause functional limitations impacting her ability to perform basic work activities and was not, therefore, a severe impairment.

With respect to the claimant's alleged cardiac issues, the ALJ noted the record contained electrocardiograms showing "probable" abnormalities but a subsequent June 2014 chest x-ray showed no evidence of acute cardiopulmonary process.[35] Moreover, when the claimant went to the emergency room for chest pain in July 2014, she had not taken her blood pressure medications in "three to four weeks."[36] Thus, the assumption was made that the chest pain was a symptom of her noncompliance with her blood pressure medications.[37] On July 12, 2014, the claimant was referred to a cardiologist, but there is no indication in the record that she followed through on the referral.[38]

---

[35] Tr. 13, 381-84, 400, 493.

[36] Tr. 13.

[37] Tr. 13, 406.

[38] Tr. 13, 505.

A review of the record supports the ALJ's finding that the claimant failed to introduce any evidence showing a functionally limiting cardiac impairment. Accordingly, the undersigned finds the ALJ's non-inclusion of any cardiac issues in his step two determination was not error.

Finally, the undersigned notes the ALJ proceeded through the remaining steps of the sequential evaluation process and considered all of the claimant's impairments – both severe and non-severe – in formulating her RFC. Thus, the claimant's hypertension and cardiac issues were considered in assessing her RFC. Consequently, any failure of the ALJ to deem the claimant's hypertension and cardiac issues severe – a finding the undersigned does <u>not</u> make – would be harmless error. *See Adams v. Bowen*, 833 F.2d 509, 512 (5th Cir. 1987) (holding that alleged error at step two was irrelevant where case did not turn on step two determination).

### The ALJ's analysis of claimant's subjective complaints and RFC analysis

The claimant argues the ALJ erred in failing to properly consider the combined effects of her impairments on her ability to perform medium work. Specifically, the claimant argues she cannot perform work at a medium capacity, because she cannot stand and walk for six hours in an 8- hour workday, frequently lift and carry 25 pound items, and occasionally lift and carry 50 pound items. The claimant argues her

-13-

multiple impairments -- including arthritis, COPD, and obesity – work in concert to limit her functional capacity.

Symptom evaluation is reserved to the ALJ, who has the sole responsibility of resolving conflicts in the evidence and evaluating a claimant's subjective complaints. *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002). In evaluating the intensity, persistence, and limiting effects of a claimant's symptoms, the ALJ considers all of the evidence of record, medical and non-medical. 20 C.F.R. §§404.1529(c), 416.929(c); SSR 16-3p, 2016 WL 1119029, at *2.

Subjective complaints must be corroborated by objective medical findings. *Harrell v. Bowen*, 862 F.2d 471, 481 (5th Cir. 1988), *citing* 42 U.S.C. §423(d)(5)(A); 20 C.F.R. 404.1529. Indeed, in Social Security Ruling 16-3p, 2016 WL 1119029, the Social Security Administration noted:

> We will not find an individual disabled based on alleged symptoms alone. If there is no medically determinable impairment, or if there is a medically determinable impairment, but the impairment(s) could not reasonably be expected to produce the individual's symptoms, we will not find those symptoms affect the ability to perform work-related activities for an adult or ability to function independently, appropriately, and effectively in an age-appropriate manner for a child with a title XVI disability claim.

Soc. Sec. Ruling 16-3p; Titles II & Xvi: Evaluation of Symptoms in Disability Claims, SSR 16-3P (S.S.A. Mar. 16, 2016). In making such determinations, "the

-14-

adjudicator will consider any personal observations of the individual in terms of how consistent those observations are with the individual's statements about his or her symptoms as well as with all of the evidence in the file." *Id.* at *6.

The undersigned first addresses the claimant's argument that her COPD – in combination with her other impairments – limits her ability to do medium work. While the ALJ accepted the claimant's testimony that she requires oxygen and rescue inhalers (Tr. 16, 36) as credible, he nevertheless found her COPD not disabling, pointing out that despite a COPD diagnosis, an April 2016 chest computerized topography demonstrated clear lungs, no pulmonary thromboembolus, and 100% oxygen saturation, all of which indicate  that the claimant's pulmonary functioning is unimpaired (Tr. 18, 568-69). Further, the claimant's respiratory examinations have been consistently normal, with normal breath sounds with no wheezing, rales, or rhonchi (Tr. 18, 424, 427, 430, 433, 448, 451, 457, 460, 466, 471, 568). Nevertheless, the ALJ determined the claimant's COPD was a severe impairment and included in his RFC the need to avoid pulmonary irritants (Tr. 15, 18).  Considering the foregoing, the undersigned concludes there is substantial evidence in the record to support the ALJ's findings with respect to the claimant's COPD.

The combination of the claimant's other impairments – particularly in light of her arthritis in her left knee and ankle  –  presents a more complicated question for

-15-

the Court because it appears the record that was reviewed by the ALJ was not complete, as certain medical documentation was presented to the Appeals Council after the ALJ issued his unfavorable decision. It is unclear to the undersigned whether – and to what extent – that evidence was considered by the Appeals Council, and whether there is substantial evidence to support the ALJ's finding of non-disability in light of that new evidence.

First, the undersigned addresses the record before the ALJ. In finding that the evidence as a whole did not support the intensity, persistence, and limiting effects that the clamant alleges, the ALJ considered the inconsistencies between the claimant's testimony, the objective medical evidence, and the claimant's demeanor at the hearing, which was proper.[39] For example, the claimant testified at the administrative hearing that the severity of her pain caused her to go to the hospital more than ten times in the last year, yet the ALJ noted the record does not contain any documentation of such visits.[40] The claimant testified that she had disabling pain in the left knee and right ankle, that she was prescribed a cane and a walker, and that she could not kneel, crouch, or crawl.[41] However, the record before the ALJ contained

---

[39] Tr. 16-20.

[40] Tr. 16, 20, 38.

[41] Tr. 16, 37, 42-46, 51.

no musculoskeletal diagnostic imaging, and the claimant's physical examinations routinely show a normal gait (Tr. 20, 424, 427, 430, 433, 448, 451, 457, 460, 467, 471). The record also shows that when the claimant complained of knee and ankle pain in April 2015, she was instructed to *increase* her physical activity (Tr. 17, 559).

The claimant testified that she could not sit or stand for long periods and had to switch from sitting to standing every 15 minutes throughout the day (Tr. 37, 55). However, the ALJ noted that the claimant never complained to her treating providers about a need to change positions from seated to standing. The ALJ also pointed out that the claimant was able to sit still without needing to change positions at her administrative hearing, which lasted more than fifty minutes (Tr. 20). The claimant specifically argues this finding – based on an application of the "sit and squirm" test – was improper.

The "sit and squirm" test has been discussed by numerous courts. In Social Security Ruling 16-p3,[42] the SSA specifically concludes that an adjudicator can

---

[42] While Social Security Administration's rulings are not binding on this court, they may be consulted when the statute at issue provides little guidance. *Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001), *citing B.B. ex. rel. A.L.B. v. Schweiker*, 643 F.2d 1069, 1071 (5th Cir.1981). The Fifth Circuit has frequently relied upon the rulings in evaluating ALJs' decisions. *See Newton v. Apfel*, 209 F.3d 448, 456 (5th Cir.2000) (relying on SSR 96–2p); *Scott v. Shalala*, 30 F.3d 33, 34 (5th Cir.1994) (relying on SSR 83–12); *Spellman v. Shalala*, 1 F.3d 357, 362 (5th Cir.1993) (relying on SSR 83–20).

consider his own "personal observations" of the individual in terms of how consistent those observations are with the individual's testimony about her symptoms, and may weigh those observations against all of the evidence in the file. SSR 16-3p   The claimant's argument that the Fifth Circuit bars the use of an ALJ's own observations of the claimant during testimony is, in fact, contrary to the jurisprudence, and the cases she cites are distinguishable on their facts.   For example, in *Benson v. Schweiker*, cited by the claimant, the Court found that the ALJ erred by failing to make a credibility determination at all.  652 F. 2d 406, 408-09 (5th Cir. 1981).  Here, the ALJ did not disregard the claimant's testimony but engaged in a detailed analysis of her symptoms and ultimately concluded that the record as a whole did not support them to the extent the claimant alleged.[43]   The claimant also cites *Spencer v. Schweiker*, 678 F.2d 42, 43, 45 (5th Cir. 1983) in support of her argument, however in *Spencer*, the Fifth Circuit reversed the decision of the district court based on the ALJ's improper application of the Medical-Vocational Guidelines without referencing the ALJ's observation of the claimant's demeanor at the hearing and only noting the demeanor as one consideration along with the totality of the evidence.  In *Spencer*, the court specifically found that the medical evidence in the record was uncontroverted and supported the plaintiff's complaints.  678 F.2d at 44-45.  In

---

[43] Tr. 16-20.

*Lovelace v. Bowen*, 813 F.2d 55, 59 (5th Cir. 1987), also cited by the claimant, the court held the ALJ made three errors, one of which was being skeptical of the claimant's complaints of pain solely on the basis of the claimant's not appearing to experience pain at the hearing. However, three years later, in *Villa*, the Fifth Circuit confirmed that *Lovelace* was limited to cases in which hearing demeanor was the *exclusive* factor used by an ALJ in valuating subjective complaints. 895 F.2d at 1024 (finding that although exclusive reliance on hearing demeanor is not permitted, reversible error is not present if hearing demeanor is one of several factors in evaluating symptoms). The Fifth Circuit has also recognized that the ALJ, unlike the court, "enjoys the benefit of perceiving first-hand the claimant at the hearing." *Falco v. Shalala*, 27 F.3d 160, 154 n.18 (5th Cir. 1994) ("The ALJ found the medical evidence more persuasive than the claimant's own testimony. These are precisely the kinds of determinations that the ALJ is best positioned to make."); *see also Harrell*, 862 F.2d at 480 ("It must be remembered that the evaluation of a claimant's subjective symptoms is a task particularly within the province of the ALJ who has had an opportunity to observe whether the person seems to be disabled.").

Here, the ALJ made a personal observation that the claimant sat during her hearing without changing position and was not in any obvious pain, which belied her

testimony.[44]  Furthermore, despite the lack of corroborative objective findings, the ALJ nevertheless included in his RFC assessment limitations of no kneeling, crouching, or crawling, and occasional balancing and stooping (Tr. 15, 18). Therefore, the undersigned finds that the allegation that the ALJ erred in relying on his personal observations of the claimant's demeanor at her hearing was not improper, because the record reflects that the ALJ's reliance on the claimant's hearing demeanor was one of many factors the ALJ considered in evaluating symptoms.

The problem for the undersigned is that after the hearing before the ALJ, the claimant submitted additional material to the Appeals Council, and it is unclear to the undersigned whether that material was actually reviewed and considered when the Appeal Council denied the claimant's request for review.  There is an overall lack of clarity with respect to the submission of these documents and the extent to which they were considered, as set forth below.

At the claimant's hearing before the ALJ on July 27, 2016, it is apparent that claimant's counsel went to the hearing with additional medical records that had not been submitted to the ALJ.  These records were described as "four pages from [a] psychiatric evaluation, 11 pages from Chabert Medical Center and . . . approximately

---

[44] Tr. 18.

-20-

30 pages from Teche Action Clinic."[45]    The claimant was permitted five days following the hearing to submit those materials for inclusion in his determination. It is unclear if those materials – the ones referenced at the claimant's hearing – were sent to, and considered by, the ALJ when he issued his unfavorable decision on July 27, 2016.

The administrative record shows that the claimant filed a request for review with the Appeals Council on September 28, 2016.  On October 11, 2016 – more than two months after the ALJ denied the claimant's application – Chabert Medical Center responded to a records request from claimant's counsel.  These documents totaled 38 pages and include medical notes which reference "imaging" that shows severe osteoarthritis in the claimant's left knee.[46]  These records also indicate:

> Weightbearing views of bilateral knees demonstrate evidence of fairly profound medial tibiofemoral compartment joint space narrowing appears significantly on the left side in narrowing the joint space and osteophtye formation and subchondral sclerosis about the adjacent endplate interfaces.  There is evidence of spurring involving the lateral tibiofemoral compartments although the patellofemoral spaces are likewise involved.  Small prominent spur identified off the articular margin of the patellar body on in both size and there is evidence of

---

[45] Tr. 30.

[46] Also of note, the records also show that the plaintiff was advised to immediately go to the emergency room to stabilize her blood pressure, which was high.  The claimant stated she "didn't have time" to go to the emergency room, and the records note the claimant was "noncompliant and refused to go" as advised.  Tr. 97-98.

traction spur at the attachment point of the quadriceps tendon bilaterally.[47]

It is unclear to the undersigned whether these records are the same records that were referenced during the claimant's hearing, but it appears at least some of those records could not be the same, as some of the records that were submitted to the Appeals Council are dated after the date of the hearing. On October 28, 2016, the Appeals Council sent the claimant's attorney a letter stating that the claimant's request for review with the Appeals Council was "filed late."[48] However, that letter states that the ALJ's unfavorable decision was issued on July 22, 2016, when, in fact, the ALJ's decision was issued on July 27, 2016, a fact pointed out by claimant's counsel in a letter to the Appeals Council on November 4, 2016.[49]

On November 18, 2016, the Appeals Council acknowledged receipt of the claimant's request for review and indicated that the claimant was permitted to send additional information in support of the request for review, but that the evidence must be "new and material to the issues considered in the hearing decision dated July 27, 2016."[50] On March 24, 2017, the Appeals Council sent another letter to the claimant,

---

[47] Tr. 99.

[48] Tr. 71.

[49] Tr. 80.

[50] Tr. 59.

stating that on May 1, 2017, the rules governing requests for review would be changing, as follows:

> Under our new rules, we will review your case for any of the following reasons:
>
> • The [ALJ] appears to have abused his or her discretion.
>
> • There is an error of law.
>
> • The decision is not supported by substantial evidence.
>
> • There is a broad policy or procedural issue that may affect the public interest.
>
> • The Appeals Council receives additional evidence that you show is new, material, and related to the period on or before the date of the hearing decision. You must show that there is a reasonable probability that the additional evidence would change the outcome of the decision. You must also show "good cause" for why you missed informing us about or submitting it at least 5 days before the date of your hearing. We explain "good cause" in the next section.[51]

"Good cause" is defined as follows:

> Under our new rules, we will find that there is good cause for why you did not tell us about or give us the evidence at least 5 business days before the date of your hearing if you show that:
>
> (1) Our action misled you.

---

[51] Tr. 57.

(2)     You had a physical, mental, educational, or linguistic limitation(s) that prevented you from informing us about or submitting the evidence earlier;

OR

(3)     Some other unusual, unexpected, or unavoidable circumstance beyond your control prevented you from informing us about or submitting the evidence earlier.[52]

Most importantly, the letter states the following:

Because your case was pending at the Appeals Council before our rule about when to give us evidence became effective, we will find that you showed good cause for not submitting additional evidence earlier. We will find some other unusual, unexpected, or unavoidable circumstance beyond your control that prevented you from telling us about or giving us the evidence earlier. We will make this good cause finding for additional evidence that you have already submitted and for additional evidence that you submit before we issue our action your case.

**You must still show that the additional evidence is also new and material, related to the period at issue, and shows a reasonable probability of changing the outcome of the hearing decision.**[53]

On August 22, 2017, the Appeals Council issued its unfavorable decision. In its letter denying the claimant's request for review, the Appeals Council stated:

You submitted Medical Records from Leonard J. Chabert Medical Center dated from February 21, 2016 to August 24, 2016 (30 pages). We find this evidence does not show a reasonable probability that it

---

[52] Tr. 58.

[53] Tr. 58 (emphasis in original).

-24-

would change the outcome of the decision.  We did not consider and exhibit this evidence.[54]

On appeal to this Court, the claimant alleges that the Appeals Council erroneously found that the claimant's new evidence did not a show a reasonable probability that it would change the outcome of the decision.  Because it is unclear to the undersigned whether the Appeals Council actually reviewed the evidence, the undersigned recommends that this matter be remanded for clarification and a rehearing to determine what effect, if any, the new evidence has on the determination of disability.

In the Fifth Circuit, in deciding whether to deny a claimant's request for review, the Appeals Council must consider and evaluate any "new and material evidence" that is submitted, if it relates to the period on or before the ALJ's decision.  *Sun v. Colvin*, 793 F.3d 502, 511-12(5th Cir. 2015), *citing* 20 C.F.R. §404.970(b).  If the Appeals Council finds that the ALJ's "action, findings, or conclusion is contrary to the weight of the evidence currently of record," the Appeals Council will then review the case. *Id.*  Otherwise, it will deny the claimant's request for review.  As the court explained in *Sun*, the regulations do not require the Appeals Council to provide a discussion of the newly submitted evidence or give reasons for denying review.  793 F.3d at 511,

---

[54] Tr. 2.

-25-

*citing Meyer v. Astrue*, 662 F.3d 700, 706 (4th Cir. 2011) ("In sum, the regulatory scheme does not require the Appeals Council to do anything more than what it did in this case, i.e., 'consider new and material evidence ... in deciding whether to grant review.'"; *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 785 (11th Cir.2014) ("[W]e hold that the Appeals Council is not required to explain its rationale when denying a request for review."); *Martinez v. Barnhart*, 444 F.3d 1201, 1208 (10th Cir.2006) ("[The claimant] points to nothing in the statutes or regulations that would require such an analysis where new evidence is submitted and the Appeals Council denies review.").

In *Sun*, the claimant's applications for DIB and SSI were denied by the ALJ, who emphasized that "the record contains very minimal evidence of medical treatment since the alleged onset date and no evidence of medical treatment since August 2011." 793 F.3d at 504. Following the ALJ's unfavorable decision, the claimant submitted new evidence to the Appeals Council, which made the additional evidence part of the record, but, providing no discussion of the newly submitted evidence, denied Sun's request for review. *Id.* The evidence presented to the Appeals Council showed that the claimant had had surgery for one of her impairments in December 2011. The district court dismissed Sun's complaint and entered a judgment in favor of the Commissioner. On appeal, the claimant argued that the

Appeals Council did not adequately evaluate the newly submitted evidence, as it provided no discussion of the evidence, and simply "found that this information does not provide a basis for changing the Administrative Law Judge's decision." *Id.* at 510.

On appeal, the claimant relied upon the Fifth Circuit's decision in *Epps v. Harris*, 624 F.2d 1267 (5th Cir.1980), wherein the court reversed a decision by the Commissioner to deny a claimant's disability claim after finding that the Appeals Council had "perfunctorily adhered to the decision of the hearing examiner." 624 F.2d at 1273. The *Epps* court explained that "[a]lthough the Appeals Council acknowledged that Epps had submitted new evidence, it did not adequately evaluate it" and "[t]his failure alone makes us unable to hold that the Secretary's findings are supported by substantial evidence and requires us to remand this case for a determination of Epps' disability eligibility reached on the total record." *Epps*, 624 F.2d at 1267.

The *Sun* court noted that the facts presented in *Sun* were different from the facts in *Epps* in one critical way, namely, that *Epps* involved the Appeals Council's affirmance and adoption of the ALJ's decision, while *Sun* involved the Appeals Council's denial of a request for review. *Sun*, 793 F.3d at 502. Additionally, while the new evidence in *Epps* directly contradicted the findings of the ALJ, in *Sun*, the

-27-

court explained that while the newly submitted evidence was significant, and "cast doubt on the soundness of the ALJ's findings," it did not necessarily contradict the ALJ's decision.  793 F.3d at 512.  For this reason, the *Sun* court stated: ". . . we cannot be sure, as the court was in *Epps*, that the [Appeals Council] neglected to evaluate the new evidence." *Id.*  The *Sun* court explained:

> Like the Fourth Circuit in *Meyer* [*v. Astrue*, 662 F.2d 700 (4th Cir. 2000)], we are unable to determine, considering the record as a whole, whether substantial evidence supports the ALJ's denial of benefits here. The ALJ found that Sun was able to ambulate effectively within a year of her injury's onset and had the residual functional capacity to perform light work. These findings may still be correct and supported by substantial evidence, but the LSU medical records and Sun's second surgery create considerable uncertainty that has not been addressed or resolved by a fact finder below. In reaching his conclusion, the ALJ highlighted the lack of medical evidence in the record. The ALJ claimed to credit Sun's testimony about her pain and December 2011 surgery, but then repeated that "the record contains very minimal evidence of medical treatment since the alleged onset date and no evidence of medical treatment since August 2011" and "no evidence of physical findings to support her reported limitations and no evidence of doctor recommended *513 activity restrictions." The ALJ indicated that the discrepancy between Sun's testimony and the lack of medical evidence contributed to his determination that Sun was not credible. Even more significant, the ALJ declined to give great weight to Dr. DiGiorgio's evaluation of Sun because "the lack of consistent treatment suggests that [Sun] retained greater functional abilities" than Dr. DiGiorgio suggested. Though the LSU medical records are not decisive, they are certainly significant, as they support Sun's testimony and indicate that as late as April 2012 there was "still no union" in Sun's ankle, and she was only "begin[ing] weightbearing in her cam boot." Despite the significance of this new evidence, no fact finder has made findings regarding the LSU clinical reports or attempted to reconcile these

> reports with other conflicting and supporting evidence in the record. "Assessing the probative value of competing evidence is quintessentially the role of the fact finder. We cannot undertake it in the first instance." Meyer, 662 F.3d at 707; see also Perez, 415 F.3d at 461 ("Conflicts of evidence are for the Commissioner, not the courts, to resolve.").

*Id.* at 512–13. The *Sun* court therefore reversed the judgment of the district court and remanded with instructions to reverse the decision of the Commissioner, and further remanded the case for a rehearing pursuant to 42 U.S.C. §405(g). The court stated it "express[ed] no opinion as to whether Sun can ultimately establish that she is disabled within the meaning of the Social Security Act." *Id.* at 513.

In the instant case, the Appeals Council invited the submission of new evidence in connection with the claimant's application for benefits. The claimant submitted new evidence and argues the Appeals Council erred in finding that the evidence would not change the ALJ's decision. The Commissioner argues that the claimant did not satisfy all of the requirements for submission of new evidence – particularly the showing of good cause – but the record shows that good cause was presumed in this matter, because of the change in the rules governing the submission of new evidence.[55] Therefore, the Commissioner's argument is not persuasive on this point.

What the undersigned cannot be sure of is whether the Appeals Council, in fact, reviewed the new evidence. Although the Appeals Council acknowledged

---

[55] Tr. 58.

-29-

receipt of 30 pages of medical evidence from the Leonard J. Chabert Medical Center, it stated the evidence "does not show a reasonable probability that it would change the outcome of the decision."[56]  Notwithstanding the foregoing, the Appeals Council also stated "[w]e did not consider and exhibit this evidence."[57]  If the Appeals Council did not consider the evidence, the court is left to wonder how it made the determination that the evidence "does not show a reasonable probability that it would change the outcome of the decision."

This Court is cognizant of the general rule that the Appeals Council is not required to provide a discussion of the newly submitted evidence or give reasons for denying review.  Nevertheless, the undersigned believes – as the court did in *Sun* – that the new evidence is significant, and potentially casts doubt on the soundness of the ALJ's findings, particularly as it goes directly to one of the factual findings that the ALJ made in his decision, that is, that the claimant lacked objective medical evidence corroborating her complaints of pain.  The new evidence contains imaging showing severe arthritis in her left knee and ankle, which substantiates the claimant's complaints of pain, her inability to stoop or crouch, and her inability to carry items weighing 25-50 pounds (which would necessitate stooping or crouching).  This Court

---

[56] Tr. 2.

[57] *Id.*

cannot be sure that the Appeals Council neglected to evaluate the new evidence, however, the record on this matter is sufficiently lacking that this Court is unable to find substantial evidence supports the ALJ's findings. Here, the Appeals Council accepted new evidence, made a substantive finding that the evidence did not change the outcome, yet also stated the evidence was not considered. On this basis, the undersigned finds the decision of the ALJ should be reversed, and this matter should be remanded for consideration of this new evidence and whether it might change the determination of non-disability.

### Testimony of the VE at the hearing

The undersigned's finding with respect to this new evidence goes directly to another alleged error of the claimant, namely that the vocational expert's ("VE") testimony was inherently flawed, because the hypothetical questions posed to the VE contained conflicting information. The VE testified that a hypothetical individual with claimant's vocational profile and RFC could perform the medium, unskilled job of hand packer, and the light, unskilled job of small products assembler, both of which exist in significant numbers in the national economy (Tr. 21-22, 52). *See* U.S. Dep't of Labor, Dictionary of Occupational Titles (DOT) §§706.684-022, 920.587-018. The VE's testimony was in response to a hypothetical question that the ALJ posed, which reasonably incorporated "all disabilities of the claimant

recognized by the ALJ" (Tr. 15, 51-52).  The claimant argues that the hypothetical question posed to the VE was improper, because it was based on an assumption that the claimant can do occasional stooping, an activity which is inherent in lifting and carrying items weighing 25-50 pounds.

In *Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994), the Fifth Circuit set forth the standard by which hypotheticals posed to the VE are judged, as follows:

> . . . this circuit's test for determining when a defective hypothetical question will produce reversible error becomes clear: Unless the hypothetical question posed to the vocational expert by the ALJ can be said to incorporate reasonably all disabilities of the claimant recognized by the ALJ, and the claimant or his representative is afforded the opportunity to correct deficiencies in the ALJ's question by mentioning or suggesting to the vocational expert any purported defects in the hypothetical questions (including additional disabilities not recognized by the ALJ's findings and disabilities recognized but omitted from the question), a determination of non-disability based on such a defective question cannot stand. . .

In the instant case, the ALJ posed a hypothetical that incorporated the limitations of, among other things, "occasional balancing and stooping, [and] no kneeling, crouching ro crawling."[58]  In response, the VE identified jobs that exist in the local and national economies.  The claimant argues the foregoing hypothetical was defective because it failed to take into consideration that the claimant cannot stoop or crouch.  The claimant claims this hypothetical undermines – and is in

---

[58] Tr. 51.

conflict with – the ALJ's assessment that the claimant can do medium level work, which also requires that the claimant be able to lift and carry 25-50 pounds. The claimant argues stopping and crouching are necessary when lifting and carrying. Because the record now contains evidence of severe osteoarthritis, there is no substantial evidence supporting the ALJ's hypotheticals, which presumed an individual who can stoop or crouch, both activities that would be required of an individual who can lift and carry 25-30 pounds.

"Assessing the probative value of competing evidence is quintessentially the role of the fact finder. We cannot undertake it in the first instance." *Meyer*, 662 F.3d at 707; *see also Perez*, 415 F.3d at 461 ("Conflicts of evidence are for the Commissioner, not the courts, to resolve."). Because the undersigned cannot determine the weight to be given to the newly submitted evidence, the matter should be remanded so that the Commissioner can conduct another hearing to explore the effect of the new evidence on the determination of disability.

## CONCLUSION AND RECOMMENDATION

Thus, for the reasons stated herein, **IT  IS THE RECOMMENDATION** of the undersigned that the decision of the Commissioner be REVERSED and that this matter be REMANDED case for a rehearing pursuant to 42 U.S.C. §405(g) to determine what effect, if any, the newly submitted records have on the determination

of the claimant's disability.  This court expresses no opinion as to whether the claimant can ultimately establish that she was disabled within the meaning of the Social Security Act.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from receipt of this report and recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen days after receipt of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of receipt, or within the time frame authorized by Fed. R. Civ. P. 6(b) shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error.  See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

Signed in Lafayette, Louisiana, this 11th day of February, 2019.

CAROL B. WHITEHURST
UNITED STATES MAGISTRATE JUDGE

-34-